***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Young, along with the briefs and arguments on appeal. The Full Commission MODIFIES the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
On its own motion, the Full Commission hereby reopens the evidentiary record in this matter and admits into evidence plaintiff's 1998 1099 form for work plaintiff did for Lowe's during that year.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between the plaintiff-employee and defendant-employer at all relevant times herein.
3. N.C. Farm Bureau Mutual Insurance Company was the carrier on the risk at all times relevant herein.
4. The parties stipulated to the plaintiff's medical records from Greensboro Orthopaedic Center, Wesley Long Community Hospital, Greensboro Surgical Associates, P.A., and LeBauer Healthcare, P.A.
5. The issues presented are:
 a) Whether the plaintiff sustained an injury by accident arising out of the course of his employment or as a direct result of a specific traumatic incident of the work assigned on February 9, 1999?
 b) Whether the plaintiff is entitled to any benefits under the North Carolina Workers' Compensation Act?
c) What constitutes the plaintiff's average weekly wage?
 ***********
Based upon the evidence of record, the Full Commission rejects the findings of the Deputy Commissioner and enters the following:
 FINDINGS OF FACT
1. At the time of the hearing, the plaintiff-employee was a 59-year-old high school graduate who had been self-employed for 29 years. The plaintiff-employee had a hernia in his groin that was repaired in 1980 and a bleeding ulcer in 1995.
2. The plaintiff-employee was a carpet layer whose duties included laying carpet padding and carpet.
3. On February 9, 1999, the plaintiff-employee was sub-contracting for Lowe's and installing about 100 yards of carpet in a residence. The plaintiff-employee and his 57-year-old assistant had to take up and lift the old carpet and move unusually heavy furniture. As the plaintiff-employee and his assistant lifted the unusually heavy chest of drawers, the plaintiff-employee felt a sudden onset of severe pain in his chest that did not exist before. The plaintiff-employee experienced difficult breathing and took many breaks during the remainder of his shift. The plaintiff-employee completed his shift.
4. Upon completion of his shift, the plaintiff-employee drove himself to the emergency room. After waiting approximately 45 minutes, the plaintiff-employee's chest pain subsided and the plaintiff-employee left without seeing a physician.
5. On February 2, 1999, the plaintiff-employee presented to Dr. David R. Patterson, an internist and specialist in gastroenterology, for evaluation of epigastric abdominal pain. Dr. Patterson reviewed the plaintiff-employee's December 4, 1997 x-rays and examined the plaintiff-employee.
6. The plaintiff-employee presented to Dr. Michael E. Norins, an internist, for an annual physical on February 7, 1999. The plaintiff had no complaints and felt well. The plaintiff-employee also presented to Dr. Philip J. Carter, an orthopedic, on February 9, 1999 complaining of low back pain, but no chest pains.
7. Dr. Patterson eventually diagnosed the plaintiff-employee with a periesophageal hernia. Dr. Patterson opined that symptoms of a periesophageal hernia include chest pains and he stated that a periesophageal hernia might be asymptomatic for extended periods of time. Dr. Patterson further stated that on February 9, 1999, when the plaintiff-employee was at work and experienced acute chest pain which eventually subsided, this episode could have been related to the plaintiff-employee's periesophageal hernia.
8. The plaintiff-employee testified at the hearing that he worked only a few light jobs between February 9, 1999 and March 17, 1999. The plaintiff-employee returned to work again on March 17, 1999 and attempted to complete a heavy job but the acute chest pain returned and the plaintiff-employee could not complete the job.
9. The plaintiff-employee presented to the emergency room on March 17, 1999 complaining of chest pain. Dr. Anita K. Lindsey, surgeon, diagnosed the plaintiff-employee with a left periesophageal hernia. Dr. Lindsey recommended surgery to repair the plaintiff-employee's periesophageal hernia that she performed on March 26, 1999.
10. Dr. Lindsey opined that a periesophageal hernia can be asymptomatic for some time and that there is no way to know exactly when the plaintiff-employee's periesophageal hernia appeared, although severe chest pain, heartburn and gas pressure felt in the chest are symptoms. Dr. Lindsey also stated that periesophageal hernias are rare.
11. Dr. Lindsey further opined that there are three causes of periesophageal hernia: 1) congenital; 2) acquired; and 3) sudden trauma. Dr. Lindsey stated that the plaintiff-employee, a carpet layer, who constantly lifts carpet and moves some furniture is at an increased risk of developing a hernia of any type, but that it is rare for a person with several different types of hernias to be more likely to have a congenital predisposition to hernias.
12. Dr. Lindsey opined that without x-rays of the plaintiff-employee between December 1997 and March 1999, there is no way to establish as a medical fact when the plaintiff-employee's periesophageal hernia occurred or presented. Dr. Lindsey further stated that no one could palpate the plaintiff-employee's periesophageal hernia because it was behind the plaintiff-employee's rib cage and that only the esophagogastroduodenoscopy could reveal whether the plaintiff-employee had a periesophageal hernia prior to February 9, 1999. The plaintiff-employee's esophagogastroduodenoscopy was performed after February 9, 1999.
13. The plaintiff-employee testified that, as a sole proprietor, he earns no set salary from his business and he only earns whatever profit is left. Plaintiff's 1998 "Schedule C" tax return indicated $45,132.00 in net receipts for 1998 and a net profit for his business of only $4,132.00. This number is not a fair representation of plaintiff's earning capacity.
14. Plaintiff worked for six months in 1998 installing carpet as a subcontractor for Lowe's.
15. The competent evidence in the record establishes that when the plaintiff-employee lifted the unusually heavy chest of drawers, it constituted an interruption in the plaintiff-employee's normal work routine as it was not a part of his usual routine to lift such a heavy chest of drawers.
16. Competent evidence in the record establishes that the plaintiff-employee sustained a hernia that appeared suddenly and did not exist before arising out of the course of his employment with the defendant-employer and as a direct result of a specific traumatic incident of the work assigned on February 9, 1999 when he lifted an unusually heavy chest of drawers.
17. Given the unusual circumstances of this case, plaintiff-employee's average weekly wage would be best calculated using a 1099 form used by Lowe's for six months of carpet installation he did for Lowe's in a subcontractor capacity.
 ***********
Based upon the foregoing findings of fact, the Full Commission rejects the conclusions made by the Deputy and concludes as follows:
 CONCLUSIONS OF LAW
1. The plaintiff lifted the unusually heavy chest of drawers on February 9, 1999 that constituted an interruption in the plaintiff's normal work routine, as it was not a part of his usual routine for the chest of drawers to be so heavy. N.C. GEN. STAT. § 97-2(6).
2. The plaintiff sustained a hernia that appeared suddenly and did not exist before arising out of the course of his employment with the defendant-employer and as a direct result of a specific traumatic incident of the work assigned on February 9, 1999 when he lifted the unusually heavy chest of drawers. N.C. GEN. STAT. § 97-2(18).
3. None of the first four methods of wage calculation listed in N.C.G.S. § 97-2(5) would yield a compensation rate fair and just to both parties. In this case, the facts are exceptional and the Commission will resort to plaintiff's 1998 Lowe's 1099 form covering 6 months of work during that year for the fairest approximation of the amount plaintiff would have been earning were it not for the injury. During the six months of work for Lowe's in 1998, plaintiff earned $14,742.11. This results in an average weekly wage of $567.00 and a weekly compensation rate of $378.00.
4. As a result of the plaintiff's compensable hernia injury, the plaintiff is entitled to temporary total disability compensation at a rate of $378.19 per week for the period from March 17, 1999 through May 7, 1999. N.C. GEN. STAT. § 97-29.
5. As a result of the plaintiff's compensable hernia injury, the plaintiff is entitled to have the defendants pay for all of his medical expenses incurred or to be incurred as a result of plaintiff's compensable hernia injury, for so long as such evaluations, examinations and treatments may reasonably be required to effect a cure, give relief and will tend to lessen the period of plaintiff's disability. N.C. GEN. STAT. § 97-25; N.C. GEN. STAT. § 97-2(19).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission MODIFIES the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Subject to a reasonable attorney's fee hereafter approved, the defendants shall pay to the plaintiff temporary total disability compensation at a rate of $378.19 per week for the period from March 17, 1999 through May 7, 1999. Compensation due which has accrued shall be paid to the plaintiff in a lump sum, subject to the attorney's fees hereinafter provided.
2. Defendants shall pay for all medical expenses incurred or to be incurred as a result of plaintiff's compensable hernia injury, for so long as such evaluations, examinations and treatments may reasonably be required to effect a cure, give relief and will tend to lessen the period of plaintiff's disability.
3. A reasonable attorney's fee of 25% of the compensation benefits due under Paragraph 1 of this Award shall be deducted from sums due the plaintiff and paid directly by defendants to plaintiff's counsel.
4. The defendants shall pay the costs.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/____________________ THOMAS JEFFERSON BOLCH COMMISSIONER
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER